OPINION
{¶ 1} Appellants, James D., Inc. and Eda Rae Corporation, appeal from an order of the Director of Health ("director") granting appellee, 4307 Care, L.L.C., a conditional certificate of need. For the following reasons, we affirm.
 {¶ 2} On October 20, 2003, 4307 Care filed a certificate of need ("CON") application before the Ohio Department of Health ("ODH") seeking approval to relocate 70 long-term care beds from two different nursing home facilities to a new nursing home facility. Twenty of the long-term care beds needed to form the new facility would come from Mountain Crest Nursing and Rehabilitation Center ("Mountain Crest"), and 50 from Price Hill Nursing Home ("Price Hill"). To house the new facility, 4307 Care proposed to renovate a vacant two-story building that had previously been used as a nursing home.[1] 4307 Care estimated that the proposed project would cost $4,235,650, with $1,500,000 allocated to renovating the facility. Upon completion, Moskowitz Family V, L.L.C. would lease and operate the proposed facility.
 {¶ 3} After ODH declared 4307 Care's CON application complete and 4307 Care published notices of completion, appellants filed written objections and a request for an adjudication hearing. Appellants own and operate the Hillebrand Nursing 
Rehabilitation Center, a 120-bed nursing home located across the street from the site of 4307 Care's proposed nursing home facility.
 {¶ 4} In accordance with R.C. 3702.52(C)(3), the director appointed a hearing examiner, who conducted an eight-day hearing concerning 4307 Care's CON application. At the conclusion of the proceedings, the hearing examiner issued a report and recommendation in which he advised the director to deny 4307 Care's CON application. The hearing examiner based this recommendation on his finding that 4307 Care's proposed facility could not meet all of the Life Safety Code standards and, thus, it could not satisfy Ohio Adm. Code 3701-12-23(C)(1)(c). The director rejected the hearing examiner's recommendation, but conditioned his grant of the CON upon the proposed facility meeting all of the applicable Life Safety Code standards. Pursuant to R.C. 3702.60(A), appellants now appeal the director's ruling to this court.
 {¶ 5} On appeal, appellants assign the following assignments of error:
[1.] THE DIRECTOR'S DECISION IS NOT IN ACCORD-ANCE WITH LAW BECAUSE HE ERRONEOUSLY SHIFTED THE APPLICANT'S BURDEN UNDER O.A.C. 3701-12-23(C)(1)(c) ONTO THE APPELLANTS[.]
[2.] THE DIRECTOR'S DECISION THAT ALTERING 4307'S DEAD-END CORRIDORS IS IMPRACTICAL OR UNFEASIBLE IS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE[.]
[3.] THE DIRECTOR'S DECISION THAT 4307 ESTAB-LISHED ITS PROJECT WILL RESULT IN A FACILITY COMPLYING WITH THE CURRENT LIFE SAFETY CODE WITHOUT WAIVERS IS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE[.]
[4.] THE DIRECTOR'S DECISION IS CONTRARY TO LAW, AND IS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE IN THAT 4307 FAILED TO SATISFY THE MANDATORY CRITERIA OF O.A.C. 3701-12-23(C)[.]
[5.] THE DIRECTOR'S DECISION IS CONTRARY TO LAW AND NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE BECAUSE THE DIRECTOR FAILED TO DENY 4307'S CON APPLICATION EVEN THOUGH 4307 DID NOT SATISFY THE MANDATORY REQUIREMENTS OF O.A.C. 3701-12-232(B)[.]
[6.] THE DIRECTOR'S DECISION IS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE, AND IS CONTRARY TO LAW, BECAUSE IT DOES NOT DENY THE CON APPLICATION EVEN THOUGH 4307 FAILED TO SATISFY THE REQUIREMENTS OF O.A.C. 3701-12-232(D)[.]
[7.] THE DIRECTOR'S DECISION TO REJECT THE APPELLANTS' EVIDENCE SHOWING LACK OF NEED FOR 4307'S PROJECT IS NOT IN ACCORDANCE WITH LAW[.]
[8.] THE DIRECTOR'S DECISION TO GRANT 4307'S CON IS NOT IN ACCORDANCE WITH LAW BECAUSE IT IS NOT BASED ON THE HEARING EXAMINER'S REPORT AND RECOMMENDATION[.]
 {¶ 6} When presented with an appeal of an order denying or granting a CON application, this court must "affirm the director's order if it finds, upon consideration of the entire record * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C.3702.60(F)(3). Although this court may engage in a limited weighing of the evidence, we may not simply substitute our judgment for that of the director as to the credibility of the witnesses or the resolution of evidentiary conflicts. In theMatter of Application of Manor Care of Parma, Franklin App. No. 05AP-398, 2005-Ohio-5703, at ¶ 9.
 {¶ 7} Because the errors asserted in assignments of error one, two, three, and four are interrelated, we will address all four assignments of error together. By these assignments of error, appellants argue that the director erred in granting the CON when 4307 Care did not present sufficient facts to satisfy Ohio Adm. Code 3701-12-23(C)(1) and (2).
 {¶ 8} Before addressing the merits of appellants' argument, we must first determine whether Ohio Adm. Code 3701-12-23(C) is applicable to 4307 Care's CON application. Ohio Adm. Code3701-12-23(C) reads, in relevant part:
For a county with a bed excess or annual bed need of less than the total number of long-term care beds included in any application reviewed under this rule, both as calculated under paragraph (B) of this rule, or in the case of a renovation, replacement, or bed relocation project, if the excess is greater than the number of beds included in the application, a presumption is created that the beds are not needed. The director shall not grant the certificate of need unless the applicant successfully bears the burden of establishing that:
(1) The project will result in renovation or replacement of one or more existing long-term care facilities, relocation of long-term care beds, or addition of long-term care beds in existing space, and:
* * *
(c) The project will result in the long-term care facility being in compliance with current applicable building and safety codes without waivers; and
* * *
(2) The project will serve a special need that otherwise will go unserved * * *; or
(3) The average annual occupancy rate for long-term care beds in the county in which the project will be located and in each contiguous county was at least ninety-five per cent during the two most recent years * * *.
 {¶ 9} As used in the first part of subsection (C), the phrases "bed excess" and "annual bed need" refer to the calculation set forth in Ohio Adm. Code 3701-12-23(B), which the director must use to determine the number of long-term care beds needed for each county during each year. However, subsection (B) is "[s]ubject to the restrictions imposed under division (E) of section 3702.68 of the Revised Code," which states that "[t]he director shall not project the need for beds * * * for the period beginning July 1, 1993, and ending June 30, 2007." Thus, R.C.3702.68(E) prevents the director from calculating bed need, and negates the director's duty under subsection (B), until June 30, 2007. Without a determination of bed need, the presumption contained in the first part of subsection (C) cannot arise. Consequently, R.C. 3702.68(E) nullifies not only subsection (B), but also the first part of subsection (C).
 {¶ 10} 4307 Care contends, and we agree, that this nullification extends to the entirety of subsection (C).[2]
The primary goal of statutory interpretation is to give effect to the intent of the enacting body. Christe v. GMS Mgt. Co., Inc.,88 Ohio St.3d 376, 377, 2000-Ohio-351. To determine legislative intent, a court must first look to the language of the statute.Bailey v. Republic Engineered Steels, Inc., 91 Ohio St.3d 38,39, 2001-Ohio-236. In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the statute to determine the intent of the enacting body. State ex rel. Thompson v. Spon,83 Ohio St.3d 551, 554, 1998-Ohio-298.
 {¶ 11} Reviewing the totality of Ohio Adm. Code 3701-12-23(C), we conclude that subsection (C) consists of two, uninterrupted parts: the first part delineating the presumption, and the second specifying the methods by which an applicant may rebut the presumption. Thus, subsection (C) provides that if the presumption arises that beds are not needed, then "[t]he director shall not grant the certificate of need unless the applicant successfully bears the burden of establishing" the enumerated factors. This interpretation is consistent with the type of showings required in subsections (C)(1), (2), and (3), which, in substance, require the applicant to demonstrate that a project will have little or no impact on the number of beds in the county or that beds may actually be needed, regardless of the calculated bed need. Further, this interpretation is consistent with the language in subsection (C)(3), which refers to a successful showing under that subsection as a "waiver." A showing under subsection (C)(3) only constitutes a "waiver" if a denial of the CON — due to the lack of bed need — is presumed. In other words, unless the applicant rebuts the presumption by making the showing contemplated in subsection (C)(3), or the other subsections, the applicant is not worthy of a "waiver" of what would otherwise be an automatic denial.
 {¶ 12} We recognize that our interpretation of subsection (C) is contrary to the director's construction of that subsection. Courts must afford due deference to an agency's interpretation of the rules it is required to administer, but only so long as the agency's interpretation is reasonable and consistent with the plain language of the rules. State ex rel. Saunders v. Indus.Comm., 101 Ohio St.3d 125, 2004-Ohio-339, at ¶ 41; State exrel. Celebreeze v. Natl. Lime Stone Co., 68 Ohio St.3d 377,382, 1994-Ohio-486. Deference to an agency's interpretation "may be disregarded or set aside when judicial construction makes it imperative to do so." Glassco v. Ohio Dept. of Job FamilyServices, Franklin App. No. 03AP-871, 2004-Ohio-2168, at ¶ 11. Here, the director's interpretation of subsection (C) would strip the second part of subsection (C) from its context and give it unintended meaning. Such an interpretation is unreasonable, and, thus, we find deference to this interpretation of subsection (C) is unwarranted.
 {¶ 13} Given our interpretation of subsection (C), that subsection is not applicable to 4307 Care's CON application. Because the presumption that beds are not needed never arises, 4307 Care is not required to rebut that presumption by making the showings contemplated in subsections (C)(1), (2), and/or (3). Consequently, the allocation of the evidentiary burden under subsection (C) or whether or not the evidence adduced during the hearing satisfies subsections (C)(1) or (2) is irrelevant to this appeal, and we overrule appellants' first, second, third, and fourth assignments of error.
 {¶ 14} By appellants' fifth assignment of error, they argue that the director erred in granting the CON because 4307 Care did not satisfy Ohio Adm. Code 3701-12-232(B)(2). We disagree.
 {¶ 15} Pursuant to Ohio Adm. Code 3701-12-232(A), a CON application to relocate long-term care beds must meet all of the criteria prescribed in Ohio Adm. Code 3701-12-232 before the director may approve the CON application. Ohio Adm. Code 3701-12-232(B)(2) provides that the applicant or the person proposed to operate the facility to which beds will be relocated must have "acquired or entered into a contract to acquire the beds being relocated."
 {¶ 16} In the case at bar, Moskowitz Family IV, L.L.C.[3] contracted with Mountain Crest to purchase twenty long-term care beds. Then, in an "Assignment of Asset Purchase Agreement," Moskowitz Family IV assigned to 4307 Care all of its rights, title, and interest under its agreement with Mountain Crest, and 4307 Care agreed to be bound by all the terms of that agreement. Therefore, 4307 Care has entered into a contract to acquire 20 beds from Mountain Crest and, by doing so, has satisfied Ohio Adm. Code 3701-12-232(B)(2).
 {¶ 17} Appellants, however, challenge the enforceability of the assignment agreement, pointing to a provision in the agreement between Moskowitz Family IV and Mountain Crest that prohibits assignment without express written consent. Appellants assert that because there is no evidence that Mountain Crest has furnished its written consent to the assignment, the director erred in concluding 4307 Care has entered into a contract to acquire the beds. We find this argument unavailing. Appellants, who have the burden of proof, presented no affirmative evidence establishing that Mountain Crest refused to allow the assignment. Further, nothing in the record indicates that Mountain Crest will attempt to repudiate its agreement to sell, thus preventing 4307 Care from obtaining the beds. As the director recognized, refusal to give consent to the assignment would jeopardize the agreement itself, as the very purpose of the agreement was to supply beds for the new facility. Finally, enforceable or not, 4307 Care has entered into the contract necessary to satisfy Ohio Adm. Code 3701-12-232(B)(2). Accordingly, we overrule appellants' fifth assignment of error.
 {¶ 18} By appellants' sixth assignment of error, they argue that the director erred in granting the CON because 4307 Care did not satisfy Ohio Adm. Code 3701-12-232(D). We disagree.
 {¶ 19} Ohio Adm. Code 3701-12-232(D) provides that an applicant must demon-strate that "relocation of the beds is more cost-effective or otherwise more feasible for the applicant than renovation of the facility * * * from which the beds are being relocated." Appellants assert that the evidence does not support the director's conclusion that the relocation of the 20 Mountain Crest beds is more cost-effective or otherwise more feasible for 4307 Care. The director found no evidence in the record to indicate that Mountain Crest is in need of renovation, and appellants do not dispute this finding. Because renovation is not needed, relocation of the beds is "more feasible" than renovation. Accordingly, we conclude 4307 Care satisfied Ohio Adm. Code 3701-12-232(D), and we overrule appellants' sixth assignment of error.
 {¶ 20} By appellants' seventh assignment of error, they argue that the director erred in refusing to consider whether their evidence proved 4307 Care's project is not needed. We disagree.
 {¶ 21} R.C. 3702.52(C)(3) states that, during an administrative hearing, the objector bears the burden of proving "that the project is not needed or that granting the certificate would not be in accordance with sections 3702.51 to 3702.62 of the Revised Code or the rules adopted under section 3702.57 of the Revised Code." Appellants contend that they proved that 4307 Care's project is not needed through expert testimony that the number of long-term care beds currently in Hamilton County exceeds the need for those beds. The director, however, disagreed and found that the existence of excess beds in the county irrelevant to the need for the proposed project because 4307 Care did not seek the addition of new beds to Hamilton County but, rather, requested approval for the relocation of beds to and from facilities located within the county.[4]
 {¶ 22} Contrary to appellants' argument, nothing in the statutes or rules requires the director to construe evidence of "over-bedding" as determinative of the need for a project proposing relocation — and not the addition — of beds.[5]
Although the director's reasoning means that an objector cannot prove lack of need for a bed-relocation project through evidence of a lack of need for additional beds in the county at large, the director's reasoning is consistent with common sense. Approving the relocation of existing beds within the county does not impact the countywide numbers. Accordingly, we overrule appellants' seventh assignment of error.
 {¶ 23} By appellants' eighth assignment of error, they argue that the director's adjudication order is not in accordance with law because the director did not base his decision upon the hearing examiner's report and recommendation. We disagree.
 {¶ 24} Pursuant to R.C. 3702.52(C)(4), "[t]he director shall base decisions concerning applications for which an adjudication hearing is conducted * * * on the report and recommendation of the hearing examiner." Here, the director unambiguously based his decision upon the hearing examiner's report and recommendation, adopting all of the hearing examiner's findings of fact and the majority of his conclusions of law. Appellants' assertion that the director instead relied upon evidence outside of the record of the adjudication hearing is mere supposition. Although appellants are unhappy with the director's decision to grant the CON, "the agency * * * is the final authority, and the recommendation of the hearing examiner may be accepted or rejected by the agency." In re 138 Mazal Health Care, Ltd.
(1997), 117 Ohio App.3d 679, 694. Accordingly, we overrule appellants' eighth assignment of error.
 {¶ 25} For the foregoing reasons, we overrule all of appellants' assignments of error and affirm the adjudication order of the Director of Health.
Judgment affirmed.
French and Deshler, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Mountain Crest, Price Hill, and the site of the new facility are all located within Hamilton County.
[2] Appellants argue that this court cannot consider this argument because 4307 Care did not file a cross-appeal assigning it as error. However, the Ohio Rules of Appellate Procedure do not require a cross-appeal in this instance. App.R. 3(C)(2) ("A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal.").
[3] Moskowitz Family IV is a separate, yet related, entity to Moskowitz Family V, the proposed lessee and operator of the new facility.
[4] Notably, in reaching this conclusion, the director refused to consider the expert witness's calculation of bed need pursuant to the formula in Ohio Adm. Code 3701-12-23(B). However, the director did consider the evidence of "over-bedding" in general; he just found that it failed to prove that the project was not needed.
[5] We note that after June 30, 2007 — the date on which the director may again project the need for beds — Ohio Adm. Code 3701-12-232(C) will apply and a bed excess will result in the presumption that beds are not needed, which in turn could lead to the denial of a CON application.